J-S48007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE L. WILSON | : | |
| | : | |
| Appellant | : | No. 851 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 14, 2023
In the Court of Common Pleas of Montgomery County
Criminal Division at No:  CP-46-CR-0001502-2021

BEFORE:  STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 27, 2025**

Appellant, Andre L. Wilson, appeals from his judgment of sentence of six months' restrictive probation with house arrest for the first five days, for driving under the influence of alcohol.  We affirm.

The trial court accurately summarized the proceedings in this case as follows:

> Officer David Fugelo of the New Hanover Township Police Department received a dispatch on February 7, 2021, about a possible medical emergency at 2617 Hill Road.  Upon arriving at the scene, he saw an SUV stopped in the eastbound lane of Hill Road facing the opposite way of travel.  A PECO truck was parked in front of the vehicle and an ambulance was parked behind the vehicle.  Officer Fugelo approached the vehicle from the passenger side as two paramedics were speaking with [Appellant], the lone occupant, through the front driver's side window.  The vehicle, which was running, suddenly accelerated forward about a foot, coming very close to the PECO truck.  In response, Officer Fugelo came around to the driver's side and began to order [Appellant] out of the vehicle for safety reasons.  During this time, the officer smelled the odor of alcohol coming from [Appellant] and from inside the vehicle.

[Appellant] eventually exited the vehicle and Officer Fugelo reached inside to turn it off. [Appellant] had stated he is diabetic, but repeatedly refused to be examined by paramedics. Officer Fugelo continued to smell a strong odor of alcohol on [Appellant]'s breath[.] [Appellant] began to walk away toward the street, which concerned Officer Fugelo because traffic was coming. The officer grabbed [Appellant] to prevent him from getting hit by a car. [Appellant] then tried to flee, which resulted in police taking him to the snow-covered ground and placing him under arrest for suspicion of driving under the influence. Officer Fugelo did not have [Appellant] perform field sobriety tests because he found [Appellant] to be so intoxicated that he posed a danger to himself and the public. The officer testified to his observations that [Appellant] had glassy, bloodshot eyes and was unsteady on his feet. [Appellant] ultimately refused to consent to a blood draw.

This court found [Appellant] guilty of driving under the influence–general impairment and ordered a Pre-Sentence Investigation Report and a PPI report in advance of sentencing. In the interim, William Burrows, Esquire, entered his appearance on [Appellant]'s behalf. The parties appeared for sentencing on March 27, 2023, at which time attorney Burrows made an oral motion for extraordinary relief. This court continued the proceedings to allow [Appellant] to file a written motion and the Commonwealth to file a response.

[Appellant] filed his motion on April 14, 2023, asserting a **Brady**[1] violation related to video evidence provided to [Appellant] by the Commonwealth on the morning of trial. The motion asserted that the Commonwealth had provided dashcam videos to trial counsel on the morning of trial, one of which [Appellant] and trial counsel watched. The attorney for the Commonwealth then informed trial counsel that all of the videos provided were similar. Trial counsel declined as a result to watch the other videos. [Appellant] then testified at trial that police had placed a bag over his head during the traffic stop. While this incident was not depicted on the video watched by trial counsel prior to the start of trial, another of the videos showed police at a different location than the traffic stop attempting to place a bag over [Appellant]'s head. The motion also alleged the video showed police searching [Appellant]'s pants

_____

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

pockets. [Appellant] argued these events constitute exculpatory evidence that would have bolstered the credibility of his trial testimony and undercut the credibility of Officer Fugelo.

The Commonwealth responded that the video at issue involving the attempted use by police of a "spit hood" after having to pull over to the side of the road while transporting [Appellant] from the scene of the traffic stop was neither exculpatory nor impeaching, the videos were turned over to [Appellant] on the morning of trial, the attorney for the Commonwealth mistakenly believed she had watched all of the videos before informing trial counsel that they all were similar and [Appellant] did not suffer prejudice because the video depicting events that occurred while [Appellant] was being transported to the police station after his arrest had no bearing on guilt or innocence.

This court held a hearing on the motion [for extraordinary relief] on September 8, 2023. The evidence from the hearing indicated, *inter alia*, that the attorney for the Commonwealth learned of the existence of video evidence for the first time at approximately 5:30 p.m., on the night before trial. The attorney for the Commonwealth immediately sent an email to trial counsel to advise that she would be making the videos available to him. After an initial attempt at sending the videos that evening failed, trial counsel received them at approximately 7:45 a.m. on the morning of trial. Trial counsel then tried to download the files but his computer indicated it would take approximately eight hours. Once the parties arrived in the courtroom, the attorney for the Commonwealth allowed trial counsel and [Appellant] to watch the videos on her laptop. Trial counsel and [Appellant] watched a video depicting the interactions between the police and [Appellant] at the scene of the traffic stop[.] Trial counsel then asked the attorney for the Commonwealth if any of the other videos showed anything different. The attorney for the Commonwealth responded that they all were similar. Trial counsel then indicated he had seen enough to proceed. The video at issue depicting police placing a "spit hood" over [Appellant]'s head occurred after police had arrested [Appellant] for driving under the influence and while he was being transported to the police station.

PCRA Court Opinion, 5/29/24, at 1-5 (citations and footnotes omitted).

The court denied the motion for extraordinary relief at the conclusion of the hearing. On November 14, 2023, the court imposed sentence and declined to stay the sentence pending appeal. On November 20, 2023, Appellant filed timely post-sentence motions, which the court denied on February 27, 2024. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

1. DID THE TRIAL COURT ERR IN NOT GRANTING THE APPELLANT [A] CONTINUANCE ON THE DAY OF TRIAL BECAUSE THE DEFENSE HAD JUST RECEIVED VIDEOS FROM THE COMMONWEALTH WHICH HAD BEEN REQUESTED IN DISCOVERY TWENTY MONTHS PREVIOUS?

2. DID THE COURT ERR IN NOT GRANTING THE APPELLANT'S POST-SENTENCE MOTION FOR A NEW TRIAL BECAUSE THE COMMONWEALTH WAS GUILTY OF A **BRADY** VIOLATION BY NOT PROVIDING THE VIDEOS TO THE DEFENSE UNTIL THE DAY OF TRIAL AND THEN MISTAKENLY ADVISING APPELLANT'S COUNSEL THAT ALL THE VIDEOS DISPLAYED THE SAME SCENARIOS?

Appellant's Brief at 3.

Appellant first contends that the trial court erred in denying his request for a continuance on the day of trial. We agree with the trial court and the Commonwealth that Appellant waived this issue.

The trial court reasoned:

Issues not properly raised and preserved in the trial court may not be considered on appeal. **See** Pa.R.A.P. 302(a); **see also Commonwealth v. Yandamuri**, 159 A.3d 503, 528 [n.23] (Pa. 2017) (citing Pa.R.A.P. 2119(c) for the proposition that an appellant must identify in the record where he preserved an issue for review); **Commonwealth v. Harris**, 979 A.2d 387, 393 (Pa.

- 4 -

Super. 2009) (stating that an issue unsupported by any citation to the record results in waiver on appeal).

No pre-trial discussions about a continuance or a possible Rule 600 violation appear of record. Moreover, [Appellant] subsequently did not make an on-the-record continuance request or an objection to the manner in which this court resolved the issue when this court ultimately called the trial to begin. Instead, when trial began, both the attorney for the Commonwealth and defense counsel indicated they were ready to proceed. (N.T., 1/5/23, p. 4). As such, the issue has not been preserved for purposes of direct appeal.

PCRA Court Opinion, 5/29/24, at 7. Having reviewed the record, we agree with this analysis.

Furthermore, the trial court correctly observed that this issue lacked merit even if Appellant had preserved it for appeal. We review the trial court's decisions in granting or denying continuances for abuse of discretion. *Commonwealth v. Prysock*, 972 A.3d 539, 541 (Pa. Super. 2009). During the post-trial hearing on Appellant's motion for extraordinary relief, defense counsel testified that on the day of trial, the court offered to allow him as much time as needed to review the videos. *See* N.T., 9/8/23, at 14 (counsel's testimony). When trial was then called to start, counsel indicated that the defense was ready to proceed. N.T., 1/5/23, at 4. Under these circumstances, we agree with the trial court's conclusion that "[even if] counsel did not view all of the videos prior [to the beginning of trial, that] does not implicate an abuse of this court's discretion." PCRA Court Opinion, 5/29/24, at 8.

In his second and final argument, Appellant contends that the Commonwealth violated *Brady* by failing to provide all videos to the defense

until the day of trial and then mistakenly advising that defense counsel that all videos displayed the same thing. We disagree.

**Brady** holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good or bad faith of the prosecution." **Commonwealth v. Holt**, 273 A.3d 514, 534 (Pa. 2022). To succeed on a **Brady** claim, the defendant must demonstrate (1) the prosecutor suppressed evidence; (2) the evidence is favorable in that it is either exculpatory or impeaching and (3) prejudice resulted. **Id**. Appellant fails to satisfy any of these prongs.

The prosecutor did not suppress any evidence. Appellant contends that the prosecution suppressed a dashcam video from after his arrest, where Officer Fugelo attempted to place a "spit hood" on Appellant's head. During discovery, the New Hannover police related that there was no dashcam or body camera footage. The day before trial, however, Officer Fugelo informed the assistant district attorney that the police had located dashcam footage of the arrest. The assistant district attorney immediately sent defense counsel a link, and counsel had the opportunity to review the videos before trial. Appellant argues that he declined to review the videos because the assistant district attorney mistakenly told him that all the videos were similar. This does not change the fact that defense counsel had them in his possession. Appellant also argues that defense counsel did not have time to view the

videos. This claim fails because, as discussed above, counsel acknowledged that the trial court gave him as much time as needed to review the videos before trial.

Nor was the "spit hood" video exculpatory. During trial, Appellant testified he fell asleep in his car after losing his keys. He accused Officer Fugelo of waking him up, accusing him of stealing his car, and then arresting him for DUI after Appellant proved the car was his. Appellant claimed that during the arrest, the officer roughed him up and attempted to place a bag on his head. N.T., 1/5/23, at 26-28. The "spit hood" video does not corroborate these claims. Defense counsel conceded that the video did not portray the arrest; it depicted events after Officer Fugelo had Appellant in custody while in transit to the police station. N.T., 9/8/23, at 39-40, 43. Thus, the video did not undercut the evidence of Appellant's conduct during the traffic stop that formed the basis for his DUI conviction.[2]

Appellant also cannot demonstrate prejudice. Prejudice is demonstrated where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

---

[2] Appellant also argues that Officer Fugelo asked him during the "spit hood" video where his car keys were. According to Appellant, this contradicts the officer's testimony that he took Appellant's keys out of the ignition. Appellant is incorrect. Officer Fugelo testified that he did not recover the keys after he took them out of the ignition. The officer testified that he did not know what happened to the keys after he had Appellant in custody. N.T. 1/5/23 at 19-20.

*Commonwealth v. Lambert*, 884 A.2d 848, 854 (Pa. 2005) (adding that "the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict"). The trial court reasoned:

> this court sitting as fact-finder determined that the evidence presented at trial proved defendant committed the offense of DUI — general impairment beyond a reasonable doubt. Video of events occurring while [Appellant] was being transported after his arrest would not have impacted this court's determination as fact-finder. Notably, the video at issue would not have "put the whole case in such a different light as to undermine confidence in the verdict." *Lambert*, 884 A.2d at 854.

PCRA Court Opinion, 5/29/24, at 10. We agree with this analysis. Officer Fugelo found Appellant stopped on the wrong side of the road with the engine on. When Officer Fugelo spoke with Appellant, the car lurched forward and almost hit a nearby truck, forcing the officer to turn the engine off. The officer observed multiple signs that Appellant was intoxicated, including the smell of alcohol, Appellant's unsteady gait, glassy bloodshot eyes, and slurred speech. N.T. 1/5/23 at 6, 15, 17. The "spit hood" video does not change these facts or place the verdict in a new light.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/27/2025</u>